IN THE UNITED STATED DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| **SENTINEL INSURANCE COMPANY LTD.** | : : : | **CASE NO.:** _____ |
| **Plaintiff,** | : : | |
| v. | : : | |
| **GEORGE SALAMA, D.C. and G.Y.S. CHIRO, INC. D/B/A SALAMA CHIROPRACTIC CENTER** | : : : : | |
| **Defendants.** | | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Sentinel Insurance Company, Ltd. ("Sentinel"), by and through its undersigned counsel, hereby files this Complaint for Declaratory Judgment against George Salama, D.C. and G.Y.S. Chiro, Inc. d/b/a Salama Chiropractic Center (collectively "Salama") pursuant to Federal Rule of Civil Procedure 57 and the Declaratory Judgment Act, 28 U.S.C. § 2201. In support, Sentinel alleges as follows:

## NATURE OF ACTION

1. Sentinel brings this action pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202 for a declaration regarding the parties' rights and obligations in connection with a series of insurance policies issued by Sentinel that provided business liability coverage to Salama. Salama has tendered defense of a lawsuit filed against it to Sentinel. Sentinel denies that it has any duty to defend Salama in connection with the underlying action because the underlying action does not state allegations covered under any policy provision and because the underlying action arises entirely out of circumstances squarely described in policy

1

exclusions. Sentinel, therefore, seeks a declaratory judgment that it has no duty to defend or indemnify Salama in connection with the underlying action.

## THE PARTIES

2. Plaintiff Sentinel is an insurance company organized under the laws of the State of Connecticut with its principal place of business in Connecticut. Sentinel is a citizen of the State of Connecticut within the meaning and intent of 28 U.S.C. § 1332.

3. Defendant G.Y.S. Chiro, Inc. d/b/a Salama Chiropractic Center is a professional corporation organized under the laws of the State of North Carolina with a principal place of business in North Carolina. G.Y.S. Chiro, Inc. d/b/a Salama Chiropractic Center is a citizen of the State of North Carolina within the meaning and intent of 28 U.S.C. § 1332.

4. Defendant George Salama, D.C. is a resident of Guilford County, North Carolina and citizen of the State of North Carolina. George Salama, D.C. is a citizen of the State of North Carolina within the meaning and intent of 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between the parties, as this action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Jurisdiction is further appropriate because this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, and an actual case or controversy of a justiciable nature exists between the parties involving the rights and liabilities under an insurance policy.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events, acts, and/or omissions giving rise to this controversy occurred in this judicial district.

## FACTUAL BACKGROUND

**A.  The Underlying Action**

8. Sentinel is, and during all relevant times has been, in the business of underwriting and issuing policies of insurance and is authorized to transact the business of insurance in the State of North Carolina.

9. Salama is a chiropractic clinic that regularly conducts business in Guilford County, North Carolina.

10. On September 27, 2016, Salama was named as a defendant to a single-count complaint filed in the Middle District of North Carolina styled *Dvorsky, et al. v. Salama, et al.*, Case No. 1:16-cv-1180 (the "Underlying Action").

11. The complaint in the Underlying Action was amended on January 13, 2017. A copy of the Amended Complaint is attached hereto as Exhibit A.

12. The Underlying Action alleges that Salama violated the Driver's Privacy Protection Act (18 U.S.C. §§ 2721 *et seq.*) by using protected personal information from a motor vehicle record and knowingly disclosing this information without consent.

13. As alleged by the Underlying Action, this disclosure was made for the purpose of marketing Salama's chiropractic services.

14. The Amended Complaint in the Underlying Action seeks an injunction prohibiting Salama from using personal information from motor vehicle records for marketing purposes.

15. The Amended Complaint also seeks an award of liquidated damages, pursuant to 18 U.S.C. § 2724(b)(1), in the amount of $2,500.00 for each instance in which Salama knowingly obtained or used protected personal information.

16. Plaintiff in the Underlying Action only seeks damages based upon the alleged violation of the Driver's Privacy Protection Act.

17. The Underlying Action does not seek any damages that would be available in the absence of the Driver's Privacy Protection Act.

B. **The Subject Policies**

18. Sentinel issued a series of Business Owner's Policies under policy number 22 SBA ZH6404 for the policy periods: October 20, 2011 to October 20, 2012; October 20, 2012 to October 20, 2013; October 20, 2013 to October 20, 2014; October 20, 2014 to October 20, 2015; October 20, 2015 to October 20, 2016; and October 20, 2016 to October 20, 2017 (collectively, the "Policies").

19. The Policies identify GYS Chiro Inc DBA Salama Chiropractic Clinic, PC with a mailing address of 3410-A W Wendover Ave, Greensboro, North Carolina 27407 as the named insured.

20. The Policies state in pertinent part:

> **A. COVERAGES**
> **1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**
> **Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. . . .

 **b.** This insurance applies:
  **(1)** To "bodily injury" and "property damage" only if:
   **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   **(b)** The "bodily injury" or "property damage" occurs during the policy period . . . .
  **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

21. The Policies include the following relevant definitions:

**5.** "Bodily injury" means physical:
 **a.** Injury;
 **b.** Sickness; or
 **c.** Disease
sustained by a person and, if arising out of the above, mental anguish or death at any time.

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means, injury, including consequential "bodily injury", arising out of one or more of the following offenses;
 **a.** False arrest, detention or imprisonment;
 **b.** Malicious prosecution;
 **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;[1]
 **d.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
 **e.** Oral, written or electronic publication of material that violates a person's right of privacy;
 **f.** Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";[2]

---

[1] Paragraph c. is quoted as amended by endorsement SS41620611 "Amendment of Exclusions and Definitions – Personal and Advertising Injury" in the 10/20/2011 to 10/20/2012, 10/20/2012 to 10/20/2013, 10/20/2013 to 10/20/2014, 10/20/2014 to 10/20/2015, 10/20/2015 to 10/20/2016 policies and endorsement SS 00600915 "Business Liability Coverage Form Amendatory Endorsement" in the 10/20/2016 to 10/20/2017 policy.

[2] Paragraph f. is quoted as amended by endorsement SS40260611 "Cyberflex Coverage" in the Policies.

5

    **g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site"; or[3]

    **h.** Discrimination that results in humiliation or other injury to the feelings or reputation of a natural person.[4]

    As used in this definition, oral, written or electronic publication includes publication of material in your care, custody or control by someone not authorized to access or distribute that material.[5]

**20.** "Property damage" means:
    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.
    As used in this definition, "electronic data" is not tangible property.

**22.** The Policies contain the following relevant exclusions:

**B. EXCLUSIONS**
  **1. Applicable to Business Liability Coverage**
    This insurance does not apply to:
    **a. Expected or Intended Injury**
      **(1)** "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or
      **(2)** "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".
    . . .

    **j. Professional services**
    "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

---

[3] Paragraph g. is quoted as amended by endorsement SS40260611 "Cyberflex Coverage" in the Policies.

[4] Paragraph h. is quoted as amended by endorsement SS41620611 "Amendment of Exclusions and Definitions – Personal and Advertising Injury" in the 10/20/2011 to 10/20/2012, 10/20/2012 to 10/20/2013, 10/20/2013 to 10/20/2014, 10/20/2014 to 10/20/2015, 10/20/2015 to 10/20/2016 policies. Paragraph h. is deleted from the 10/20/2016 to 10/20/2017 policy pursuant to endorsement SS 00600915 "Business Liability Coverage Form Amendatory Endorsement".

[5] This paragraph is added to the Policies by endorsement SS40260611 "Cyberflex Coverage".

6

   . . .

  **(5)** Any health or therapeutic service treatment, advice or instruction[.]

**p. "Personal and Advertising Injury"**
   . . .
  **(11)** Arising out of the violation of a person's right of privacy created by any state or federal act.

  However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act[.]

**t. Violation Of Statutes That Govern E-mails, Fax, Phone Calls Or Other Methods of Sending Material Or Information**
"Bodily injury," "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
…
  **(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, or communicating or distribution of material or information.

23.    The policy covering 2016–2017 includes endorsement SS00600915, which contains an additional exclusion for "personal and advertising injury":

**p. "Personal and Advertising Injury"**
   . . .
  **(15)** Arising out of any access to or disclosure of, any person's or organization's confidential or personal information including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.  This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by your or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

7

## ACTUAL CONTROVERSY AND RIPENESS

24. This is an actual, ripe, and live controversy between the parties regarding Sentinel's rights and obligations to provide defense and/or indemnity in connection with the Underlying Action.

25. Salama has sought Sentinel's acknowledgement of its duty to defend it in connection with the Underlying Action.

26. Sentinel, however, denies that it has any duty to defend Salama in connection with the Underlying Action.

## COUNT ONE – DECLARATORY JUDGMENT (DUTY TO DEFEND)

27. Sentinel hereby repeats and incorporates the allegations contained in all prior paragraphs of this Complaint as though fully set forth herein.

28. The plaintiff in the Underlying Action does not allege any injury, sickness, or disease.

29. Consequently, no "bodily injury" is alleged in the Underlying Action and, based on the allegations in the Underlying Action, no potential for coverage for "bodily injury" exists.

30. The plaintiff in the Underlying Action does not allege any physical injury to tangible property or loss of use of tangible property.

31. Consequently, no "property damage" is alleged in the Underlying Action and, based on the allegations in the Underlying Action, no potential for coverage for "property damage" exists.

32. The plaintiff's claims in the Underlying Action are generally based upon the underlying defendants knowingly obtaining protected personal information and knowingly disclosing that information.

8

33. Consequently, no "occurrence" is alleged in the Underlying Action and, based on the allegations in the Underlying Action, no potential for coverage for "bodily injury" or "property damage" exists.

34. The plaintiff in the Underlying Action does not allege false arrest, detention or imprisonment; malicious prosecution; the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises a person or organization occupies, committed by or on behalf of its owner, landlord or lessor; oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; oral, written or electronic publication of material that violates a person's right of privacy; copying, in the defendants' "advertisement" or on the defendants' "web site", a person's or organization's "advertising idea" or style of "advertisement"; infringement of copyright, slogan, or title of any literary or artistic work, in the defendants' "advertisement" or on the defendants' "web site"; or discrimination that results in humiliation or other injury to the feelings or reputation of a natural person.

35. Consequently, no "personal and advertising injury" is alleged in the Underlying Action and, based on the allegations in the Underlying Action, no potential for coverage for "personal and advertising injury" exists.

36. Each of the Policies only provides coverage, for "bodily injury" or "property damage" that occurs during the policy period, or for an "offense" committed during the "policy period". Accordingly, there can be no coverage under those Policies for which no "bodily injury" or "property damage" occurred, and no "offense" was committed, during the policy period.

9

37. The Policies state that no insurance coverage exists for "bodily injury" or "property damage" expected or intended from the standpoint of the insured or for "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

38. The plaintiff's claims in the Underlying Action are generally based upon the underlying defendants knowingly obtaining protected personal information and knowingly disclosing that information.

39. Consequently, based on the allegations in the Underlying Action, no potential for coverage for "bodily injury," "property damage," or "personal and advertising injury" exists.

40. The Policies state that no insurance coverage exists for "bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering or failure to render any professional service including, but not limited to, any health or therapeutic service treatment.

41. The plaintiff's claims in the Underlying Action are generally based upon the underlying defendants knowingly obtaining protected personal information and knowingly disclosing that information in the pursuit of rendering professional chiropractic services.

42. Consequently, based on the allegations in the Underlying Action, no potential for coverage for "bodily injury", "property damage", or "personal and advertising injury" exists.

43. The Policies state that no insurance coverage exists for "personal and advertising injury" arising out of a person's right of privacy created by any state or federal act.

44. The only relief sought in the Underlying Action is a remedy created by federal law. Salama would not have any potential liability arising out of the Underlying Action in the absence of the federal Driver's Privacy Protection Act.

45. Consequently, based on the allegations in the Underlying Action, no potential for coverage for "personal and advertising injury" exists.

46. The Policies further state that no insurance coverage exists for "personal and advertising injury" arising directly or indirectly out of any action that violates or is alleged to violate a statute that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

47. Liability based on the federal Driver's Privacy Protection Act stems from the sending, transmitting, communicating or distribution of material or information.

48. Consequently, based on the allegations in the Underlying Action, no potential for coverage for "personal and advertising injury" exists.

49. The 2016–2017 policy states that no insurance coverage exists for "personal and advertising injury" arising out of access to or disclosure of confidential or personal information.

50. The plaintiff's claims in the Underlying Action are generally based upon the underlying defendants knowingly obtaining protected personal information and knowingly disclosing that information.

51. Consequently, based on the allegations in the Underlying Action, no potential for coverage for "personal and advertising injury" exists.

52. Sentinel, therefore, seeks and is entitled to a judicial declaration that it has no duty to defend Salama against the Underlying Action or to participate in Salama's defense.

53. The issuance of declaratory relief by this Court will terminate some or all of the existing controversies between the Parties.

## COUNT TWO – DECLARATORY JUDGMENT (DUTY TO INDEMNIFY)

54. Sentinel herby repeats and incorporates the allegations contained in all prior paragraphs of this complaint as though fully set forth herein.

55. Sentinel has no duty under the terms of the Policies to indemnify Salama for claims that do not seek to recover for "bodily injury" or "property damage" caused by an "occurrence" or for "personal and advertising injury."

56. The plaintiff in the Underlying Action does not seek to hold Salama liable for damages for "bodily injury" or "property damage" caused by an "occurrence" or for "personal and advertising injury."

57. The claim asserted against Salama in the Underlying Action does not fall within the coverage provision; therefore, Sentinel has no duty to indemnify Salama.

58. Sentinel has no duty under the terms of the Policies to indemnify Salama for claims for "bodily injury" or "property damage" expected or intended from the standpoint of the insured or for "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."

59. The plaintiff in the Underlying Action seeks to hold Salama liable for damages caused by the underlying defendants knowingly obtaining protected personal information and knowingly disclosing that information.

60. The claim asserted against Salama in the Underlying Action falls within an exclusion; therefore, Sentinel has no duty to indemnify Salama.

61. Sentinel has no duty under the terms of the Policies to indemnify Salama for claims that seek to recover for "bodily injury", "property damage", or "personal and advertising

12

injury" arising out of the rendering of or failure to render any professional service including, but not limited to, any health or therapeutic service treatment.

62. The plaintiff in the Underlying Action seeks to hold Salama liable for damages caused by the underlying defendants knowingly obtaining protected personal information and knowingly disclosing that information in the pursuit of rendering professional chiropractic services.

63. The claim asserted against Salama in the Underlying Action falls within an exclusion; therefore, Sentinel has no duty to indemnify Salama.

64. Sentinel has no duty under the terms of the Policies to indemnify Salama for claims that seek to recover for "personal and advertising injury" arising out of the violation of a person's right of privacy created by a federal act.

65. The plaintiff in the Underlying Action seeks to hold Salama liable for damages caused by a violation of the federal Driver's Privacy Protection Act.

66. The claim asserted against Salama in the Underlying Action falls within an exclusion; therefore, Sentinel has no duty to indemnify Salama.

67. Sentinel has no duty under the terms of the Policies to indemnify Salama for claims that seek to recover for "personal and advertising injury" arising directly or indirectly out of any action that violates or is alleged to violate a statute that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

68. The plaintiff in the Underlying Action seeks to hold Salama liable for damages caused by the sending, transmitting, communicating or distribution of material or information.

69. The claim asserted against Salama in the Underlying Action falls within an exclusion; therefore, Sentinel has no duty to indemnify Salama.

13

70. Sentinel has no duty under the terms of the 2016–2017 policy to indemnify Salama for claims that seek to recover for "personal and advertising injury" arising out of access to or disclosure of confidential or personal information.

71. The plaintiff in the Underlying Action seeks to hold Salama liable for damages caused by the underlying defendants knowingly obtaining protected personal information and knowingly disclosing that information.

72. The claim asserted against Salama in the Underlying Action falls within an exclusion; therefore, Sentinel has no duty to indemnify Salama.

73. The issuance of declaratory relief by this Court will terminate some or all of the existing controversies between the Parties.

## **RELIEF REQUESTED**

WHEREFORE, Sentinel respectfully asks for the following relief:

A. A declaration that there is no coverage for Salama under the Policies for the claim asserted in the Underlying Action;

B. A declaration that Sentinel has no duty to defend Salama against the Underlying Action;

C. A declaration that Sentinel has no duty to indemnify Salama for any settlement entered or judgment rendered against Salama in the Underlying Action;

D. Such other, further, or different relief to which Sentinel may be entitled.

Respectfully submitted this 7th day of April 2017.

                                        Respectfully submitted,

                                        */s/ Joshua B. Baker*
                                        Joshua B. Baker (N.C. State Bar No. 43390)
                                        Maynard, Cooper & Gale, P.C.
                                        2400 Regions/Harbert Plaza
                                        1900 Sixth Avenue North
                                        Birmingham, AL 35203
                                        Telephone: 205.254.1000
                                        Facsimile: 205.254.1999
                                        jbaker@maynardcooper.com


                                        *Attorneys for Plaintiff Sentinel Insurance Company Limited*